IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| | * | |
| vs. | * | No. 4:78cv00025 SWW |
| | * | |
| | * | |
| | * | |
| | * | |
| STATE OF ARKANSAS, et al., | * | |
| | * | |
| Defendants. | * | |

CONSOLIDATED WITH

| | | |
|---|---|---|
| FRANK E. TAPPIN, et al., | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| | * | |
| vs. | * | No. 4:91cv00627 SWW |
| | * | |
| | * | |
| | * | |
| | * | |
| ARKANSAS STATE POLICE | * | |
| DEPARTMENT, et al., | * | |
| | * | |
| Defendants. | * | |

ORDER

For nearly thirty years, the Arkansas State Police Department ("ASPD") was under federal court supervision by way of a Consent Decree and subsequent Settlement Agreement with Frank E. Tappin and other class plaintiffs concerning past discrimination in its employment policies and practices. The ASPD and other State defendants recently moved for termination of this Court's supervision to which the Tappin plaintiffs responded in opposition. By

Memorandum and Order entered March 28, 2007, this Court found that ASPD had satisfied certain agreed upon obligations in their Settlement Agreement with the Tappin plaintiffs such that court supervision may end.[1]

The matter is now before the Court on motion of the Tappin plaintiffs for attorneys' fees and costs [doc.#205]. The State defendants have responded in opposition to plaintiffs' motion and plaintiffs have filed a reply to defendants' response. For the reasons that follow, the Court finds that plaintiffs' motion for attorneys' fees and costs must be denied.

I.

For the convenience of the reader, the Court restates the background to this litigation as set forth in its March 28th Memorandum and Order. On February 1, 1978, the United States filed a complaint against the State of Arkansas and Directors and Commissioners of the ASPD alleging that defendants had engaged in a pattern or practice of unlawful employment discrimination against African-Americans and women on the basis of race and sex in violation of federal law. *See United States v. State of Arkansas, et al.*, No. 4:78cv25 SWW. That same day, a Consent Decree was entered between the United States and the State of Arkansas, the purpose and intent of which was "to ensure that [African-Americans] and women are not disadvantaged by the hiring, promotion, assignment and other employment policies and practices of the ASPD" and that harm due to past unlawful discrimination be remedied.

On September 27, 1991, African-American commissioned employees of the ASPD filed a class action complaint against ASPD, among others, alleging that ASPD had engaged in

---

[1] The Court's Memorandum and Order is hereby incorporated into today's Order as if set out word for word.

unlawful employment discrimination against them and other African-American Arkansas State troopers in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and other federal laws. *See Tappin, et al. v. Arkansas State Police Department, et al.*, No. 4:91cv627 SWW ("Tappin"). By way of relief, plaintiffs sought, among other things, enforcement of the 1978 Consent Decree in *United States v. State of Arkansas, et al.*, No. 4:78cv25 SWW. The two actions were consolidated and class action status was granted. Subsequently, on October 6, 1995, a proposed Settlement Agreement was approved by the Court in large measure.[2] Like the Consent Decree, it was the "purpose and intent of [the] Settlement Agreement to ensure that African-American men and women are not disadvantaged by the selection, hiring, assignment, and promotion policies and practices of the Arkansas State Police Department." Judge Reasoner subsequently adopted the Settlement Agreement "as the order of this Court."

      Court supervision of the Consent Decree and Settlement Agreement continued over the ensuing years. In August 2004, the consolidated action was transferred to this Court from the docket of the late Judge Reasoner and this Court held a hearing to resolve pending motions. Following the hearing, this Court, by Order dated August 20, 2004, deferred ruling on a joint motion of the parties to modify the Consent Decree and denied ASPD's motion to terminate the Court's supervision of the Settlement Agreement without prejudice to renew. This Court found that it had continuing jurisdiction over the Settlement Agreement and encouraged the parties to work together toward resolving any outstanding issues and setting a date for its termination. Subsequently, this Court, by Order dated September 21, 2004, granted a joint motion of the parties to modify the Consent Decree and stated that the Consent Decree would remain in effect

---

[2] The Court dissolved a provision for numerical quotas in the Settlement Agreement.

for two years from the date of the Order.

On August 4, 2006, plaintiffs filed a Motion for Extension of Tappin Settlement Agreement [doc.#188], stating they have analyzed enough information to determine that there have been violations of the Settlement Agreement concerning adverse impact to African-American troopers in the implementation and utilization of polygraph and written entrance exams.  ASPD opposed plaintiffs' motion to extend and filed Defendants' Renewed Motion to Terminate the Court's Supervision of the Tappin Settlement Agreement [doc.#189], stating the terms of the Settlement Agreement have been met.  Plaintiffs, in turn, filed an Amended Motion for Enforcement of Tappin Settlement Agreement [doc.#190].

Meanwhile, the Consent Decree expired on September 23, 2006, and the United States Department of Justice ("DOJ"), by letter dated September 25, 2006, requested that *United States v. State of Arkansas, et al.*, No. 4:78cv25 SWW, be closed on the Court's docket and in the electronic filing system.  That request was granted and this case thereafter proceeded solely pursuant to the Tappin Settlement Agreement.

On November 21, 2006, this Court held a hearing on Defendants' Renewed Motion to Terminate the Court's Supervision of the Tappin Settlement Agreement and plaintiffs' Amended Motion for Enforcement of Tappin Settlement Agreement.[3]  This Court allowed additional briefing and submission of exhibits following the hearing.  Thereafter, on March 28, 2007, this Court entered its Memorandum and Order granting Defendants' Renewed Motion to Terminate the Court's Supervision of the Tappin Settlement Agreement and denying as moot Plaintiffs' Amended Motion for Enforcement of Tappin Settlement Agreement.

---

[3] The Court denied as moot plaintiffs' motion for extension of the Tappin Settlement Agreement [doc.#188].

II.

Plaintiffs assert that ASPD was in breach of the Settlement Agreement when the goals stated therein were not met within designated time lines and that because of the continued need for court supervision and the legal work to remedy the noncompliance, plaintiffs continued to work on the case.  Plaintiffs additionally assert that the continued extension of the monitoring period and Court supervision along with the remodeling and implementation of the requirements of the Settlement Agreement were all forms of relief sought by plaintiffs to bring the ASPD out of breach of the Settlement Agreement and that if not for their continuing efforts to ensure compliance, the Settlement Agreement might have been dissolved years ago with little or no substantive relief granted to plaintiffs.  Plaintiffs seek $203,500 in attorneys' fees based on 994 hours of their time at the prevailing hourly rate following their declared breach of the Settlement Agreement.

>The Settlement Agreement addresses the payment of attorneys' fees and costs as follows:
>
>Section I (D) <u>Settlement Agreement is Contractual</u>.  The terms of this Settlement Agreement are contractual in nature and not merely recital.
>
>Section I (J) <u>Payment of Attorneys' Fees and Costs</u>.  The parties agree that the payment of the Plaintiffs' attorneys' fees and costs as specified in Section III, paragraph (A)(2), is in full and final settlement of all claims for such fees and costs.  This does not preclude additional attorneys' fees if the plaintiffs obtain relief for a breach of this agreement.
>
>* * *
>
>Section III (A) <u>Payment of Damages</u>.  The Employer agrees to pay, for settlement, the sum of $230,000 (two hundred thirty thousand dollars) to be paid as follows:
>
>>(1) $130,000 (one hundred thirty thousand dollars) in a cash settlement to be distributed to the Named Plaintiffs as compensation for any mental distress suffered; and

>   (2) $100,000 (one hundred thousand dollars) in costs and
>   attorneys' fees in full settlement of accrued costs and attorneys'
>   fees, with the understanding that the Employer is not liable for any
>   other fees and costs of the class, unless it breaches this Settlement
>   Agreement.

Thus, the Settlement Agreement prohibits recovery of additional attorneys' fees unless plaintiffs "obtain relief for a breach" of the Settlement Agreement.[4]  But no such relief has been obtained by plaintiffs in this action.

It is true that by letter dated May 4, 1999, plaintiffs accused ASPD of breaching the Settlement Agreement.  The letter states in part as follows:

>   It is now May 4, 1999, and the agreement was in breach in January and continues to be in breach and now we have past [sic] the deadline for a new target date. Therefore, you may consider this letter to be a notice of breach.  As you know, under the local rules, we need to apprise you before seeking by motion relief from breach.  You may consider this letter our notice to you for the need for the state's official position on failure to comply with al the deadlines. * * *  It will be necessary for us to file a motion for relief from the court and, again, under local rules, this requires us to confer in an effort to reach a consensual agreement on the motion.  We expect this motion would include a request for sanctions.

Plaintiffs acknowledge in their letter that it would be necessary to file a motion or otherwise formally ask this Court to find a breach of the Settlement Agreement in order to "obtain relief for a breach...."  Plaintiffs, however, never filed any such motion for breach of the Settlement Agreement, and ASPD disputes that it was ever in breach of the Settlement Agreement.  Although this Court acknowledged in its March 28th Memorandum and Order plaintiffs' contention that ASPD "has been in continual breach of the [Settlement Agreement] since 1999 based on numerous failures to implement a non-discriminatory hiring and promotion system, failure to timely enact human relations courses and require all members to attend, and

---

[4] On October 27, 1995, a check was issued to Duncan & Rainwater, plaintiffs' attorneys, in the amount of $238,578.75.

failure to comply with the minority recruiting portion of the [Settlement Agreement]," Mem. and Order at 6, this Court did not accept plaintiffs' contention. Nor has ASPD been found in contempt for any alleged failure to comply with the Settlement Agreement which, as previously noted, was adopted by Judge Reasoner as an order of the Court. Plaintiffs simply have never "obtain[ed] relief for a breach" of the Settlement Agreement and, thus, are not entitled to an additional award of attorneys' fees and costs.[5]

IT IS THEREFORE ORDERED that Plaintiffs' motion for attorney's fees and costs [doc.#205] be and it hereby is denied.

Dated this 5th day of September 2007.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE

---

[5] Moreover, failure of the plaintiffs to formally ask that this Court address the question of breach in 1999 (or after) per their May 4th letter while now unilaterally declaring ASPD to be in breach since 1999 would seemingly reward plaintiffs with the continued accrual of attorneys' fees for their failure to earlier ask this Court to address the question.